UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARLOS PINEDA and ALEXANDRA PEREZ, )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>DANIEL KEELER, DENNIS HARRIS, JOSEPH R.)<br>WATTS, JOSEPH P. TOOMEY, WILLIAM J. )<br>GALLAGHER, EDWARD GATELY, JANINE )<br>BUSBY, and the CITY OF BOSTON, )<br>    Defendants. )<br>) | C.A. No. 05-10216-JLT |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS WATTS AND TOOMEY'S MOTION FOR SUMMARY JUDGMENT**

Now come the Plaintiffs, and hereby oppose the summary judgment motion of Defendants Watts and Toomey on the grounds that material facts are still in dispute which must be decided by a jury. As grounds therefore, the Plaintiffs incorporate their L.R. 56.1 statement of facts and submit this memorandum of law.

**INTRODUCTION**

The Plaintiffs have brought this claim under 42 U.S.C. §1983 and related state law. Plaintiff Pineda alleges that the Defendant officers falsely arrested him, illegally searched his home and used excessive force in making the arrest. Plaintiff Perez alleges that the Defendants illegally searched her home. The Plaintiffs allege that these actions violated the Fourth and Fourteenth Amendments to the Constitution as well as the Massachusetts Civil Rights Act.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is required only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

1

matter of law." Fed. R. Civ. P. 56.  The evidence before the Court must be construed "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

Once the moving party has served a properly supported motion asserting entitlement to summary judgment, the burden is on the non-moving party to present evidence showing the existence of a trial-worthy issue.  Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004), citing Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  For the purpose of summary judgment, an issue of fact is "genuine" if it "may reasonably be resolved in favor of either party."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (citations omitted).  "Material" facts are those which possess "the capacity to sway the outcome of the litigation under the applicable law."  Nat'l Amusements v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

## ARGUMENT

### I. THE ARREST OF THE PLAINTIFF VIOLATED THE FOURTH AMENDMENT BECAUSE THE OFFICERS LACKED PROBABLE CAUSE

The Defendants did not have probable cause to arrest[1] the Plaintiff.  As such, any officer found to have participated in the arrest would not be entitled to summary judgment on the Plaintiff's Fourth Amendment claim for unlawful seizure.

Probable cause to arrest exists when "at the moment the arrest was made,…the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that" an offense

---

[1] Although during discovery several of the officers boldly and incredibly denied that that the Plaintiff was even arrested, the Defendants wisely do not make this argument in their motion for summary judgment.  See Kaupp v. Texas, 538 U.S. 626, 630 (2003)  ("[W]e have never sustained against Fourth Amendment challenge the involuntary removal of a suspect from his home to a police station and his detention there for investigative purposes…absent probable cause or judicial authorization.") (internal citation omitted).

2

had been committed and that the arrestee was the perpetrator. Beck v. Ohio, 379 U.S. 89, 91 (1964). In the case at bar, although no officer has ever explained why the Plaintiff was arrested, the Defendants assert in their motion that they arrested the Plaintiff because he was present in a home where police believed a suspect was hiding, because he told the police his car was missing, and because the police had just chased that car to the residence. See Def. Motion for Sum Judg. at 7. This evidence does not rise to the level of reasonable suspicion, let alone probable cause.

In a nearly identical case, Jenkins v. City of New York, 478 F.3d 76, 81 (2d Cir. 2007), the Second Circuit reversed a grant of summary judgment to the defendants on the plaintiff's §1983 claim for wrongful arrest. In 1999, as described in Jenkins, a series of robberies and a homicide occurred in Brooklyn, New York. Based on witness and victim descriptions, the police came to believe that the same person was involved in each of the crimes. In a number of the robberies and the homicide, witnesses indicated the participation of a second individual and gave a vague description of him. Id.

During the first robbery, the victim's red Honda Civic was stolen. The Honda was subsequently described by five of the other robbery victims as the vehicle used by their assailants. When police recovered the Honda on July 13, 1999, they discovered, along with property belonging to one of the robbery victims, the fingerprints of a man named Derrick Blyther. The police then decided to arrest Blyther for these crimes. Id. at 82.

Plaintiff Jenkins claimed that, early one morning he was startled by a loud banging at the door and, when his roommate Blyther opened the door, the police burst in with guns drawn, threw Blyther to the ground and placed him in handcuffs. Other officers then headed straight for plaintiff Jenkins, who resembled the description given by the victims. They forced him to the ground, placed him in handcuffs, and arrested him. Id.

Based on mainly on these facts, the district court granted summary judgment to the defendants. Id. at 86. In overturning the lower court's ruling, however, the Second Circuit found that it would be unreasonable to base probable cause to arrest on the plaintiff's presence in the suspect's apartment and the plaintiff's vague match to a description provided by an eyewitness. Id. at 91.

Similarly in the case at bar, the Defendants claim in their motion that they arrested Pineda because he was in the same apartment as the suspect they had been chasing. To further justify their actions, the Defendants also point to the fact that Pineda and Serrano, aka Cruz, were both wearing boxer shorts and a tee shirt when they were arrested and that Pineda inquired about his car when the police came into the residence. See Def. Motion for Sum Judg. at 7. Once again, these facts, even with the addition of the fact that both the suspect and the Plaintiff were wearing similar outfits, amounts to nothing more than a hunch or a vague suspicion that the Plaintiff was involved in the shooting.

First, it is important to note that the Defendants do not, and could not, justify the arrest by claiming that the Plaintiff was the driver of the car that fled the police. This argument is foreclosed by officer Foley's admission that he was able to identify the driver during the chase as someone known to him, Norberto Serrano.[2] See Pl. Stmnt. Mat. Facts at 2. Therefore, the Defendants cannot justify the arrest by arguing that Pineda committed any motor vehicle offenses, and they rightly decline to do in their motion.

Second, the facts known to the officers in no way supported probable cause that the Plaintiff was involved in the shooting. The officers responding to the scene of the shooting were looking for a white van. They received an anonymous tip that a white Honda was with a white

---

[2] As the Court knows, it must apply the fellow officer rule and, in determining whether probable cause existed, examine the "collective knowledge and information of all the officers involved…" United States v. Bashorun, 225 F.3d 9, 13 n.2 (1st Cir. 2000).

4

van. See Pl. Stmnt. Mat. Facts at 1, 2. The Defendants' argument to justify the arrest thus requires the inference that, not only was this the same white van involved in the shooting, but also that a white Honda was somehow involved as well.

Even if these inferences were reasonable, which the Plaintiff disputes, this argument is severely weakened by the fact that, when the police turned onto Melnea Cass, there was no white van in sight. Rather, the officers saw a white Honda Civic driving towards them and presumed it to be the same car the woman identified as being with the white van, despite the fact that no such van was even seen in the vicinity. See Stmnt. of Mat Facts at 1.

Furthermore, during the chase, officer Foley was able to identify the driver of the Honda as being Norberto Serrano. See Stmnt. of Mat Facts at 2. Therefore, in order to justify the arrest, the officers would not only have to have reasonably believed that the Honda was involved in the shooting, but also that the Plaintiff was a passenger in the car. Given that officers followed the driver of the car into Plaintiff's apartment, a man they had identified as being someone other than Pineda, there is simply no factual support for the Defendants' argument that the Plaintiff was an occupant of that car.[3]

The Defendants' further attempt to justify the arrest by pointing out that Pineda told police his car was missing when they entered the apartment. See Def. Motion for Sum Judg. at 7. If anything, this should have alerted police that the car had been used without authority, since they knew Pineda was not the driver. This information is certainly not evidence that the Plaintiff was involved in the shooting.

Finally, the Defendants claim that, because Pineda and Serrano were both wearing boxers and a tank top, that somehow this justified arresting Pineda. See Def. Motion for Sum Judg. at 7. This argument ignores the fact that officers arrested Pineda before Serrano was located. Thus, at

---

[3] Indeed the other two occupants were women. See Pl. Stmnt. Mat. Facts at 3.

the time of the arrest, they did not know that Serrano and Pineda were similarly dressed.  In addition, as mentioned above, the officers knew that Pineda was not the driver a the time of the arrest.  See Stmnt. of Mat Facts at 2.

Since there was no evidence that Pineda was involved in the shooting or in the car chase, he was arrested without probable cause.  Therefore, the Defendants are entitled to summary judgment.

## II.    THE SEARCH OF THE PLAINTIFF'S HOME VIOLATED THE FOURTH AMENDMENT

### A.  THE WARRANTLESS SEARCH CANNOT BE EXCUSED BY THE PROTECTIVE SWEEP DOCTRINE

Even assuming that the entry into the Plaintiffs' house was lawful, the warrantless search of the residence was unjustified in its inception and unreasonable in its scope.  The Supreme Court has held that a limited protective sweep is permissible under the Fourth Amendment only when the officers have a "reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."  Maryland v. Buie, 494 U.S. 325, 337 (1990).  The Court emphasized, however, that the intrusion was limited to that which is "no more than necessary to protect the officer from harm."  Id. at 333.

In addition, the sweep can "extend only to a cursory inspection of those spaces where a person may be found," and the sweep may last only as long as necessary to "dispel the suspicion of danger."  See United States v. Ford, 56 F.3d 265 (D.C. Cir. 1995) (evidence discovered under a mattress and behind a window shade during a protective sweep of an arrestee's home was inadmissible because the discovery occurred after the officer determined that no other individuals were present in the apartment).

In the case at bar, it is clear that the officers exceeded the scope of a valid protective sweep. Perez and Pineda both testified that officers flipped over mattresses, went through drawers and even flipped over a toilet that their child was using. See Stmnt. of Mat. Facts at 10-12. This is clearly beyond the scope of what is permissible.[4] The protective sweep doctrine simply does not permit a complete and thorough search of an apartment for evidence. For this type of extensive search of a residence, the officers must have a warrant. The failure to obtain a warrant in this case was a violation of the Fourth Amendment.

### B.  PEREZ'S CONSENT WAS INVOLUNTARY

Although the Defendants offer consent as an alternative justification for the search, the officers cannot show that Perez's consent was untainted and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Therefore, they cannot rely on this exception to the Fourth Amendment's warrant requirement.

Ms. Perez's ability to voluntarily consent was completely undermined by the coerciveness of the entire situation – including the forcible nighttime entry, the unlawful arrest of her husband, the warrantless search, and the long occupation of her home (where her young children were present) by numerous police officers, during which time she was not free to leave. Stmnt. of Mat. Facts at . See also Holloway v. Wolff, 482 F.2d 110, 115 (8th Cir. 1973) (finding consent involuntary where "coercive factors" were in effect because the individual was aware of evidence of a prior, illegal search); United States v. Chambers, 395 F.3d 563, 570 (6th Cir. 2005) (finding consent involuntary where it occurred after police conducted an illegal search, defendant had been told of the contraband found, and defendant was not free to leave because, under these

---

[4] Although the Defendants attempt to argue that the Plaintiffs' apartment was messy, the Plaintiffs testified that they cleaned it twice a week. See Stmnt. of Mat Facts at 13.

7

circumstances, "it would be reasonable for [the defendant] to think that refusing consent would be a futile gesture amounting to no more than closing the barn door after the horse is out.")

In addition to the coercive factors discussed above, the officers also informed Perez that they were going to search her house with or without her consent, and that, if she failed to give consent, they would simply go get a warrant. See Stmnt. of Mat. Facts at 16. In a situation such as this, her alleged consent is nothing more than mere "acquiescence" to a show of authority. Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968).

Where the police enter and illegally search prior to obtaining consent, the government must additionally prove that the consent was not only voluntary, but also sufficiently attenuated from the search to remove the taint of the prior illegality. See United States v. Pena, 924 F. Supp. 1239, 1250 (D. Mass. 1996); United States v. Goodrich, 183 F. Supp. 2d 135, 145 (D. Mass. 2001). The factors to consider in determining whether consent vitiates the taint of the prior illegal search include: (1) how much time passed between the illegal search and the consent, (2) whether there were intervening events to distance the consent from the taint of the search, and (3) the "purpose and flagrancy" of the illegal search. Pena, 924 F. Supp. at 1250. The Defendants cannot even come close to meeting this burden.

In the present case, there were absolutely no intervening events to attenuate the consent from the illegal search and arrest. The police officers who conducted the entry and search were continuously present in the apartment during this time. Under these circumstances, the amount of time that elapsed in this case rendered the situation more coercive, rather than less coercive, as the police were occupying the home of Ms. Perez and her small children over a number of hours in the middle of the night. Thus, even if her consent were somehow deemed voluntary, it was not "sufficiently attenuated from the illegal [arrest and] search so as to dissipate the taint of the

prior illegality." United States v. Matthews, U.S. Dist LEXIS 7710 at *14 (D.Mass. March 1, 2006).

> III. **DEFENDANTS WATTS AND TOOMEY ARE NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE OF THEIR DELIBERATE INDIFFERENCE TO PEREZ AND PINEDA'S FOURTH AMENDMENT RIGHTS**

Defendants Watts and Toomey are liable for the false arrest of Pineda, the excessive force used against him,[5] and the search of the Plaintiffs' home, because their failure to supervise subordinate officers led to the violation of the Plaintiffs' rights. As such, they are not entitled to summary judgment on any of the Plaintiff's claims.

Supervisors such as Toomey and Watts may be held liable under § 1983 for the behavior of their subordinate officers where their "action or inaction are affirmatively linked . . . to that behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence amounting to deliberate indifference.'" Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002), quoting Lipsett v. University of P.R., 864 F.2d 881, 902 (1st Cir. 1988) (internal citation omitted).

To succeed on a supervisory liability claim, a plaintiff must show deliberate indifference to the violation of his constitutional rights, and he must connect the defendant's conduct to the violation. See Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581-82 (1st Cir. 1994). To demonstrate deliberate indifference, a plaintiff must provide sufficient evidence of (1) a substantial risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994); Camilo-Robles v. Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998).

---

[5] Nowhere in their memorandum do the Defendants argue that the use of force against the Plaintiff was reasonable. Rather, they claim they are not liable because they did not participate in the arrest. See Def. Motion for Sum. Judg. at 2, 3. As such, Plaintiff has chosen not to brief the issue of the unreasonableness of the force used since Defendants do not contest it.

9

This causation requirement can be satisfied, however, even if the supervisor did not participate directly in the conduct that violated a citizen's rights.  For example, a plaintiff may prevail on this point if he shows "a sufficient causal nexus." Maldonado-Denis, 23 F.3d at 581-82.  This may be found if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct.  Id.

Moreover, supervisory liability does not require a showing that the supervisor had actual knowledge of the offending behavior.  Rather, a defendant supervisor may be liable for the foreseeable consequences of such conduct if he should have known of the constitutional violation but for his deliberate indifference or willful blindness.  Camilo-Robles, 151 F.3d at 6-7.

In addition, the Civil Rights Act does not replace the law of joint tortfeasors.  Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."  See Malley v. Briggs, 475 U.S. 335, 345 n.7 (1986). The mere fact that others—such as the arresting officer whom Defendants have not identified—may have contributed to the violation of the Plaintiffs' rights, does not relieve other tortfeasors who substantially contributed to that detention.  See Tilson v. Forrest City Police Dep't, 28 F.3d 802, 815 (8th Cir. 1994).

In the case at bar, both Defendant Watts and Defendant Toomey were the supervising sergeants of the patrol officers on the night in question and both were equal in terms of authority and responsibility.  Watts arrived on the scene as officers were running into the apartment and was "in charge" once he entered.  Although he claims he did not see anyone arrested, saw no excessive force, and did not see the search, his role as a supervisor was to make sure no one's rights were violated, and to know who was arrested.  Despite being the supervisor in charge

10

because he was from the district in which the arrest took place, Watts claims to have given no orders to anyone that night. <u>See</u> Stmnt. of Mat. Facts at 17-23.

Toomey's role as supervisor was the same as Watts since he was the same rank and was from the same district. <u>See</u> Stmnt. of Mat. Facts at 19.  Yet Toomey incredibly claimed that he did not know who was in charge at the apartment on that night, that he has no knowledge of what happened to Pineda, and that he did not see the search of the apartment.  He did state, however, that patrol supervisors, such as Watts and himself, should know who is and is not arrested at the scene of an alleged crime. <u>See</u> Stmnt. of Mat. Facts at 26-28.

Because of the Defendants' grossly inadequate supervision, the Boston Police Department disciplined Watts and Toomey for their conduct on the night in question.  This lack of "accountability" led to the Plaintiff Pineda being arrested without "just cause," according to the Department. <u>See</u> Stmnt. of Mat. Facts at 24, 29.  Ten officers and seven supervisors, including Watts and Toomey, were interviewed by the Internal Affairs Department during the investigation of this incident.  Incredibly, not one of these seventeen could, or would, identify the officer that actually arrested Pineda, further demonstrating the Defendants' deliberate indifference to the rights of the Plaintiffs' on that night.

**IV.     THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

The Defendants are not qualifiedly immune.[6]  Rather, the facts alleged, taken in the light most favorable to the Plaintiff, show the officers' conduct violated a constitutional right, that the right was clearly established at the time of its alleged violation, and that a reasonable officer in the Defendants' place would have known his conduct was unconstitutional. <u>Kauch</u> v. <u>Dep't for Children, Youth and Their Families</u>, 321 F.3d 1, 4 (1st Cir. 2003)

---

[6] The Defendants do not claim that the qualified immunity doctrine would shield them from liability for the search or the excessive force.  They likewise do not claim that a reasonable supervisor would not have realized he was violating constitutional rights.

11

In analyzing whether a constitutional right has been clearly established, it is not necessary for the particular violation in question to have been previously held unlawful. Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Mitchell v. Forsyth, 472 U.S. 511, 535 n.12 (1985) (holding that a clearly established right does not require judicial precedent to that effect). Instead, a clearly established constitutional right exists in the absence of precedent where "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. To that extent, government officials are considered "on notice" that conduct is violative of established law if the state of the law at the time gave them "fair warning" that their conduct would be unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (2002).

It was well-settled at the time of this incident that the Fourth Amendment protected against unreasonable searches and seizures, and gave rise to the "requirement that arrests be supported by probable cause." Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992) (citing a 1964 Supreme Court case). Therefore, the only question is whether subordinate officers acted unreasonably in arresting the Plaintiff and searching the Plaintiffs' home, thus allowing for recovery against Toomey and Watts for their failure to supervise these subordinates.

Importantly, whether a reasonable police officer would have known that his conduct contravened clearly established law is not based on the police officer's subjective state of mind. Floyd v. Farrell, 765 F.2d 1, 4 (1st Cir. 1985). Rather, the inquiry is whether the police officer was "objectively reasonable."

The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed. See Anderson, 483 U.S. at 644; Saucier, 533 U.S. at 207 (section 1983

12

claims under the Fourth Amendment are evaluated for objective reasonableness). There should be no doubt that probable cause remains the relevant standard. If officers of reasonable competence would agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer. See Jenkins, 478 F.3d at 87 ("arguable probable cause does not mean almost probable cause.")

As discussed in detail above, no reasonable officer would have believed that there was probable cause to arrest the Plaintiff for either the shooting or the motor vehicle offenses committed by Serrano. See Section I-A, supra. Since the decision to arrest was not "objectively reasonable," the Defendants are not entitled to summary judgment on immunity grounds.

## CONCLUSION

Therefore, the Plaintiffs respectfully request that this Court deny the Defendants' Motion for Summary Judgment.

Respectfully Submitted,
Plaintiffs Carlos Pineda and Alexandra Perez,
By their attorneys,

//s// Michael Tumposky
Stephen Hrones
BBO No. 242860
Jessica D. Hedges
BBO No. 645847
Michael Tumposky
BBO No. 660618
Hrones, Garrity & Hedges
Lewis Wharf – Bay 232
Boston, MA 02110-3927
T) (617) 227-4019

**CERTIFICATE OF SERVICE**

    I, Michael Tumposky, hereby certify that, on this the 11th day of July, 2007, I have caused to be served a copy of this document, where unable to do so electronically, on all counsel of record in this matter.

                                               //s// Michael Tumposky
                                               Michael Tumposky